UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OLAN DOYE WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:16-CV-03184-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Plaintiff Olan Doye Williams brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. Jurisdiction

Mr. Williams filed an application for Disability Insurance Benefits under Title II of the Social Security Act on February 23, 2010. AR 149-50. His alleged onset date is August 1, 2008. AR 149. His application was initially denied on June 17, 2010, AR 96-98, and upon reconsideration on October 15, 2010, AR 104-05.

A hearing with Administrative Law Judge ("ALJ") Sue Leise occurred on December 7, 2011. AR 532-76. On December 16, 2011, ALJ Leise issued a decision finding Mr. Williams ineligible for disability benefits under Title II. AR 477-86. The Appeals Council denied Mr. Williams's request for review on February 5, 2016. AR 491-95. Mr. Williams appealed to the United States District Court for the Eastern District of Washington, and the Court remanded the matter on January 15, 2014. AR 496-523. The Appeals Council issued a remand order consistent with the District Court's order on May 6, 2014. AR 528-29.

ALJ Leise held a second hearing on October 22, 2015. AR 423-73. The ALJ issued a decision on July 29, 2016, finding Mr. Williams not disabled through December 31, 2010, but that he became disabled as of January 9, 2015, through the date of the decision. AR 401-16. Because the Appeals Council did not assume jurisdiction, the decision of the ALJ became final, *see* 20 C.F.R. § 404.984, and Mr. Williams filed the present action challenging the denial of benefits on October 14, 2016, pursuant to 42 U.S.C. § 405(g). ECF No. 5.

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f)

& 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

//

//

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Mr. Williams was born in 1963. AR 660. He has a marginal education. AR 414. Mr. Williams has an extensive medical history. Of note, he experienced a cerebrovascular accident (stroke) that required insertion of a right carotid stent in the left vertebral artery origin in 2005. AR 248. He had an additional carotid artery procedure in 2015. AR 663. This resulted in significant vision issues, resulting in an ultimate diagnosis of blindness in 2015. AR 405. Mr. Williams also suffers from degenerative disc disease, morbid obesity, gout, a learning disorder, and adjustment disorder with depressed mood. *Id.* He was also treated for cancer of the lymph nodes in the 1980s. AR 288.

## V. The ALJ's Findings

The ALJ determined that Mr. Williams was not under a disability within the meaning of the Act through December 31, 2010, but he became disabled as of January 9, 2015, and has continued to be disabled through the date of the decision. AR 416.

**At step one**, the ALJ found that Mr. Williams had not engaged in substantial gainful activity since his alleged onset date of August 1, 2008 (citing 20 C.F.R. § 404.1571 *et seq.*). AR 405.

**At step two**, the ALJ found Mr. Williams had the following severe impairments: status post cerebrovascular accident; carotid stenosis; status post carotid angioplasty and stenting with vision loss; degenerative disc disease (status post back surgery); morbid obesity; gout; learning disorder; and adjustment disorder with depressed mood (citing 20 C.F.R. § 404.1520(c)). AR 405.

At **step three**, the ALJ found that through December 31, 2010, Mr. Williams did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 683-84.

At **step four**, the ALJ found Mr. Williams had the residual function capacity to perform sedentary work with the following limitations: (1) he can lift and carry up to ten pounds occasionally; (2) he can stand and walk up to two hours total in an eight-hour workday; (3) he can sit six hours of eight; (4) he can occasionally climb stairs and ramps; (5) he cannot climb ladders, ropes, or scaffolds; (6) he can occasionally balance and crouch; (7) he must avoid work around hazards such as unprotected heights and dangerous machinery; (8) he cannot do work involving operation of a motor vehicle; (9) he cannot do work involving fine manipulation of items half-inch in size or smaller; (10) he can seldom stoop, kneel, and crawl, with "seldom" defined as no more than ten percent of an eight-hour workday; and (11)

he is able to remember, understand, and carry out simple tasks or instructions "typical of occupations of an SVP of 1 or 2." AR 408-13.

The ALJ then determined that since August 1, 2008, Mr. Williams is not capable of performing his past relevant work as a truck driver. AR 413-14.

At **step five**, the ALJ found that through December 31, 2010, in light of his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform, including document scanner, envelope stuffer, and general lot attendant. AR 414-15.

In addition to these findings, the ALJ also found that beginning on January 9, 2015, the severity of Mr. Williams' impairments met the severity requirements for disability pursuant to Section 2.02 of 20 C.F.R. 404, Subpart P, Appendix 1.

### VI.   Issues for Review

Mr. Williams argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly weighing the medical evidence; (2) improperly assessing the residual functional capacity and erroneously finding other jobs Mr. Williams could do prior to his date last insured; and (3) discrediting Mr. Williams without providing specific, clear, and convincing reasons. ECF No. 13 at 7.

//

## VII. Discussion

**A. The ALJ did not err in the analysis of the medical evidence.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

**1. Dr. Bothamley**

Dr. William Bothamley, M.D. was one of Mr. Williams' treating physicians. He provided two opinions in August 2011 and March 2015. AR 348-49, 689-91. The ALJ gave little weight to both of these opinions. AR 411-12. Mr. Williams asserts this was in error. ECF No. 13 at 7-13.

In the opinion, the ALJ focused significantly on the stability of Mr. Williams' impairments through 2011. AR 411-12. For example, Dr. James Ogden, O.D., opined in December 2011 that Mr. Williams' vision had been stable for five years. AR 393. The ALJ also took notice of Mr. Williams' "longstanding impairments" of back pain and stroke residuals, but ultimately found that these conditions had not "worsened substantially" between July 25, 2008, and December 31, 2010. AR 412. The record demonstrates some gradual worsening, AR 258, 273, 290-91, but the ALJ accounted for this by including additional limitations in Mr. Williams' residual functional capacity, AR 411-12.

In addition, the ALJ opined that Mr. Williams' activities were inconsistent with the limitations proposed by Dr. Bothamley. AR 411-12. This is generally supported by the record except for the isolated incident in which Mr. Williams cooked for 48 people at the American Legion. In this instance, the ALJ did not take into account that the strain of the activity resulted in a trip to the emergency room. AR 257. This, however, is but one isolated incident, and the other activities the ALJ referred to—fishing, playing cards, and doing chores—are less isolated and do not support the limitations posited by Dr. Bothamley. The ALJ was allowed to rely on these in making her decision. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may reject a treating physician's opinion

that is inconsistent with other evidence in the record, such as claimant's activities of daily living).

### 2. Drs. Ho and Toews

Dr. Marie Ho, MD, performed a consultative examination in May 2010 and provided a report. AR 287-93. Dr. Ho also provided responses to medical interrogatories on February 9, 2016. AR 896-98. The ALJ gave "significant weight" to Dr. Ho's opinion, with the exception to her opinions on Mr. Williams' mental functioning. AR 410. The ALJ reasoned that Dr. Ho "does not specialize in this area" and gave greater weight to the opinion of psychologist Dr. Jay Toews, Ed.D. *Id.* Mr. Williams asserts this was in error because Dr. Toews is not a neurologist, and Mr. Williams' mental functioning limitations are a byproduct of his cerebrovascular impairments.

Dr. Ho noted in her 2010 opinion that as a consequence of his cerebrovascular impairments, including his mini strokes/TIAs, Mr. Williams has trouble with communication, comprehension, memory, and focus, and that he gets irritable and anxious because of this. AR 288. Due to these issues, Dr. Ho opined that Mr. Williams may be limited in his ability to function in the workplace. AR 293.

Dr. Toews performed a psychological evaluation on Mr. Williams, which included objective testing, on September 21, 2010. AR 314-31. In his report, Dr.

Toews also noted that Mr. Williams suffers from TIAs and multiple cerebrovascular accidents. AR 314, 317. Mr. Williams scored outside of normal ranges on his Trails testing, which Dr. Toews stated may be indicative of neurocognitive compromise due to his strokes. AR 317. Ultimately, Dr. Toews found that Mr. Williams was "cognitively intact" and that his cognitive, mood, and affective factors would not preclude employment. AR 293, 316-17.

Even though his cerebrovascular accidents contribute to his cognitive limitations, Dr. Toews considered these in forming his opinion. Further, Dr. Toews performed objective testing to determine Mr. Williams' actual level of cognitive functioning. Dr. Ho did not perform testing, and her limitations were generally more speculative. AR 293. Dr. Toews is trained to administer cognitive testing and evaluate mental health function, considering physical factors that may be relevant. It was not unreasonable for the ALJ to give more weight to this opinion, particularly since it was more conclusive and derived from objective testing.

### 3. Mr. Tuning

Physicians' assistant Mr. Tuning provided a statement in December 2010 that opined Mr. Williams had limitations that would result in a finding of disability. AR 345-46. The record also contains a clinical note stating the same. AR 391.

Opinions from nurse practitioners or physicians' assistants are considered "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

In this case, the ALJ gave little weight to Mr. Tuning's opinion in part due to Mr. Williams' level of activity. AR 411. As in the analysis of Dr. Bothamley's opinions, some isolated events demonstrate that Mr. Williams' condition deteriorates with too much exertion, *see supra* at pp. 10-12, but the record does not support the contention that majority of the activities the ALJ referenced, such as fishing, playing cards, and doing limited chores, result in the same significant deterioration. These inconsistencies are a germane reason for rejecting this "other source" opinion.

**B. The ALJ did not err with regard to Mr. Williams' residual functional capacity at step five.**

Mr. Williams raises multiple issues regarding the calculation of his residual functional capacity and also argues that the ALJ did not sustain her burden at step five. The Court disagrees.

First, Mr. Williams asserts that his morbid obesity was not considered, both in error generally and contrary to the remand from the district court in 2014. ECF No. 13 at 15-16. The ALJ, however, did consider the cumulative effects of Mr. Williams obesity. ALJ Leise determined that Mr. Williams' obesity did not meet or equal any of the listings, and she also found that "the medical record does not show that obesity has worsened any condition described to the point that it would meet or equal the listings." AR 406. Moreover, Mr. Williams has failed to point to limitations stemming from his obesity. *See Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005) (holding that to succeed in an obesity claim, the claimant must show that obesity exacerbated other symptoms).

Next, Mr. Williams argues that the ALJ erred by not finding him disabled based on his ability to do less than the full range of sedentary work. ECF No. 13 at 16. Mr. Williams is mistaken that a finding of less than a full range of sedentary work necessarily equates to a finding of disabled. *See* SSR 96-9p. In this case, the ALJ relied on the testimony of a vocational expert. AR 414-15.

Mr. Williams next argues that his poor eyesight was not appropriately accounted in the residual functional capacity. ECF No. 13 at 16-17. The ALJ did include limitations related to Mr. Williams' poor eyesight prior to his date last insured, however, and referenced the record, particularly the findings of Dr. Ogden. AR 408, 410. It is well established that where the evidence is susceptible to multiple interpretations, the Court will uphold the ALJ's findings that are supported by the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Finally, Mr. Williams argues that the ALJ erred at step five because Mr. Williams is not actually capable of performing the jobs listed. ECF No. 13 at 18-19. The ALJ found Mr. Williams capable of work as a document scanner,[1] a general lot attendant, and an envelope stuffer.[2] AR 414-15. These findings were based on testimony from an impartial vocational expert. *Id.*

Mr. Williams asserts that the general lot attendant occupation include duties beyond the scope of his residual functional capacity, specifically parking vehicles. ECF No. 13 at 19. His residual functional capacity does include a full restriction on

---

[1] The Commissioner concedes that document scanner was improper. ECF No. 14 at 12. In light of the concession, the Court does not further examine this occupation.

[2] There is some confusion regarding the job of "envelope stuffer." The parties do not dispute that this does not appear in the DOT, and both proceed in their arguments with the occupation of toy stuffer. ECF Nos. 13 at 19-20, 14 at 14-15. The record also indicates that the vocational expert was also unable to find an envelope stuffer in the DOT. AR 465-66. Later examination at the hearing deals with toy stuffing. AR 470. For these reasons, the Court proceeds with toy stuffer, not envelope stuffer.

the use of motor vehicles. AR 408. The ALJ questioned the vocational expert regarding this position, and the vocational expert spoke from experience regarding this position. AR 463-64. While there was no discussion of the duties of parking vehicles, the vocational expert was aware of the driving restriction. AR 458. Even though the Dictionary of Occupational Titles ("DOT") includes parking vehicles as part of the potential duties, *see* DOT 915.473-010, the vocational expert was able to testify to subcategories of this work. *See Moncada v. Chater*, 60 F.3d 521, 524 (1995) ("Because vocational experts discuss more specific jobs than the general category of job found in the DOT, that the DOT has other jobs which also fall into the general 'category' of work that [the claimant] is about to perform is of no moment.") The ALJ reasonably relied on this testimony of the vocational expert.

The ALJ also relied on the vocational expert in the finding for toy stuffer. Again, like with the lot attendant job, the vocational expert testified based on the residual functional capacity—which included a restriction on dangerous machinery—and stated that Mr. Williams could perform this job, which was present in a legally sufficient number on which the ALJ could rely. AR 465-70.

In summary, the Court does not find the ALJ erred with the calculation of the residual functional capacity, nor the reliance on the expert testimony at step five.

**C. The ALJ did not err with regard to Mr. Williams' credibility determination.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen,* 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient: rather the ALJ

must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

In her assessment, ALJ Leise notes to statements made by Mr. Williams that are inconsistent with the medical record. AR 409. For example, despite stating in his 2011 hearing that he did not make breakfast for 48 people at an American Legion event, AR 47, this is clearly shown in the record. AR 257. This type of inconsistent statement may be considered by the ALJ in determination credibility of subjective complaints. *Smolen*, 80 F.3d at 1284. While Mr. Williams is correct that, as the district court found in 2014, isolated incidents alone do not counter Mr. Williams' subjective pain testimony, *see* ECF No. 13 at 21, AR 509-10, his lack of truthfulness about his record is a valid factor for the ALJ to consider.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence or free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

*///*

*///*

3. The District Court Executive is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 30th day of June, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**